**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| **SAMMIE L. COLEMAN,** | CASE NO. 3:21 CV 1834 |
| Plaintiff, | |
| v. | JUDGE JAMES R. KNEPP II |
| **CITY OF TOLEDO,** | |
| Defendant. | **MEMORANDUM OPINION AND ORDER** |

### INTRODUCTION

This action arises out of Plaintiff Sammie L. Coleman's claim that his employer, Defendant City of Toledo ("the City") discriminated and retaliated against him based on his race and subjected him to a hostile work environment in violation of Title VII of the Civil Rights Act of 1964 and Ohio Revised Code § 4112.02. The matter now before the Court is Defendant's Motion for Summary Judgment (Doc. 28-1). Plaintiff opposed (Doc. 34), and Defendant replied (Doc. 38).

For the reasons set forth below, Defendant's motion (Doc. 28-1) is granted in part and denied in part.

### BACKGROUND

Viewing the facts in the light most favorable to Plaintiff, the background of this case is as follows:

Parties Involved

Plaintiff, an African American male, is a Street Maintenance Technician employed by Defendant in the Division of Streets, Bridges, and Harbor. (Plaintiff Depo., at 16, 152)[1]. In this role, Plaintiff maintains street surfaces and ensures crewmember safety. *Id.* at 15. Plaintiff is a member of AFSCME Local 7 union. *Id.* at 16.

History of Complaints

Plaintiff began working for Defendant on October 24, 1994. *Id.* at 14. Allegations of disparate treatment first arose on February 4, 2013, when Plaintiff filed a charge with the Ohio Civil Rights Commission ("OCRC") alleging he was denied promotion in favor of a less-qualified Caucasian candidate. (Doc. 36, at 1). The second OCRC charge filed by Plaintiff, dated August 6, 2013, alleged Defendant unjustly discriminated and retaliated against Plaintiff in response to his filing of the February 2013 OCRC charge. *Id.* at 2. On April 2, 2014, Plaintiff filed a charge with the OCRC alleging he was treated differently than Caucasian coworkers because of his race and in retaliation for filing previous charges against Defendant. *Id.* at 4. On July 5, 2017, Plaintiff filed a charge with the OCRC alleging race discrimination and retaliation were causes of his advanced discipline for behavior of which Caucasian coworkers committed but were not punished. *Id.* at 6. On May 3, 2017, Plaintiff filed a charge with the OCRC alleging race discrimination and retaliation were reasons why he was denied promotion in favor of a less-qualified Caucasian coworker. *Id.* at 7.

Alternate General Foreman

In October 2019, Defendant sought to fill an alternate general foreman position for a one-day appointment. (Doc. 28-26, at 1). Alternate general foreman is a temporary position where an

---

1. Plaintiff's Deposition is located at ECF Doc. 27.

employee assumes the duties and compensation of a general foreman when the general foreman is unavailable. (Plaintiff Depo., at 20-21). Citing Plaintiff's advanced discipline status, Defendant denied him promotion to alternate on October 7, 2019. (Doc. 28-26, at 2). Later that same month, Plaintiff filed a charge with the OCRC alleging race discrimination and retaliation as reasons he was denied promotion to the position of alternate in favor a Caucasian coworker on a similar level of advanced discipline. (Doc. 36, at 8). The OCRC found "probable cause" existed to believe Defendant discriminated as Plaintiff alleged. (Doc. 18-1, at 3).

General Foreman

In November 2019, Defendant held structured oral interviews to establish a list of qualified candidates for the position of General Foreman – Streets. (Doc. 28-10, at 2-3). The questions were approved by Human Resources prior to the interviews. (Doc. 28-33, at 4). Sixteen candidates, including Plaintiff, participated in the oral interviews. Plaintiff's score of 38 placed him in a three-way tie for third place. (Doc. 28-21). Defendant maintains a Position Control Committee, which is responsible for final approval of all hiring and promotional appointments. (Doc. 28-28, at ¶ 5). In December 2019, Deputy Chief of Staff Abby Arnold, who sat on the Position Control Committee, received a memo from the Department of Public Service requesting approval to promote two candidates from the oral interview list to the position of General Foreman – Streets. *Id.* at ¶ 9. In response, Arnold placed a hold on filling the positions, citing her dissatisfaction with the nature of the questions used in the interviews as the reason for her decision. *Id.* at ¶¶ 10-11. Specifically, Arnold was concerned the questions were "lacking with regard to leadership ability" and that she was not afforded the opportunity to approve the questions in advance. *Id.* She thereafter learned of allegations that the structured interview questions from November 2019 may have been improperly disseminated prior to the interviews. *Id.* at ¶ 12. The parties agree the

3

allegations of cheating were never substantiated. *See* Doc. 38, at 10; Doc. 34, at 16. Arnold ordered the interviews be reconducted to include leadership questions. (Doc. 28-28, at 3). Because of COVID-19, the interviews were postponed until January 2021. *Id.*

Of the fourteen candidates who interviewed in January 2021, Plaintiff ranked tenth with a score of 15. (Doc. 25-25). Three of the top-ranking candidates, all Caucasian men, were subsequently promoted to General Foreman – Streets: Jeffrey Neeper (scoring first); Douglas McNulty (scoring third); and Robert Lawecki (tied for fourth). (Doc. 28-10, at 3). Plaintiff filed a charge with the OCRC on February 17, 2021, alleging Defendant's failure to promote him to general foreman was due to race discrimination and retaliation. (Doc. 36, at 9).

Harassment

Plaintiff also brings claim of hostile work environment under 42 U.S.C. § 1981, Ohio Revised Code § 4112.02, and 42 U.S.C. § 2000(e). (Doc. 18, ¶¶ 64, 67, 76, 82). Plaintiff testified workplace harassment began in 2014, where several general foremen first used the nicknames "Mokey" and "Don King" to refer to Plaintiff. (Plaintiff Depo., at 157). The use of these nicknames continued for years, based on the appearance of Plaintiff's hair. *Id.* at 136. Furthermore, Plaintiff says he was told he would never be promoted while he wore his hair in an afro style. *Id.* at 134, 137. Plaintiff complained internally to Defendant about the harassment, but Defendant took no action. *Id.* at 156-57.

STANDARD OF REVIEW

"Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law." *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 611 (6th Cir. 2009) (internal quotation marks omitted); *See*, *also*, Fed. R. Civ. P. 56(a). This court

observes that when "reviewing a summary judgment motion, credibility judgments and weighing the evidence are prohibited." *Schreiber v. Moe*, 596 F.3d 323, 333 (6th Cir. 2010) (internal citations omitted). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986).

DISCUSSION

Plaintiff alleges Defendant committed race discrimination, retaliation, and subjected him to a hostile work environment in violation of Title VII and Ohio Revised Code § 4112.02. For the reasons discussed below, Defendant's motion is granted in part and denied in part as to the discrimination and retaliation claims and granted in full on the hostile work environment claims.

Discrimination

Plaintiff brings claims of discrimination under Title VII and Ohio Revised Code § 4112.02. "[F]ederal case law governing Title VII actions is generally applicable to cases involving alleged violations of Chapter 4112." *Williams v. Ford Motor Co.*, 187 F.3d 533, 538 (6th Cir. 1999).

Title VII expressly prohibits employers from discriminating against employees based on their race. *See* 42 U.S.C. § 2000e-2(a)(1). A Title VII discrimination claim "can be established 'either by introducing direct evidence of [discrimination] or by proffering circumstantial evidence that would support an inference of [discrimination].'" *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014) (quoting *Imwalle v. Reliance Medical Products, Inc.*, 515 F.3d 531, 538 (6th Cir. 2008)).

When Plaintiff puts forth circumstantial evidence of racial discrimination, the Court applies the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, Plaintiff has the initial burden of establishing a prima facie case of discrimination. To establish a prima facie case, Plaintiff must show by preponderance of the

5

evidence that (1) he was a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was replaced by someone outside the protected class or was treated differently than similarly situated, non-protected employees. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006).

When Plaintiff establishes a prima facie case of discrimination, the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for its action. *Tex. Dep't of Cmty Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (quoting *McDonnell*, 411 U.S. at 802). Assuming Defendant asserts a legitimate, nondiscriminatory reason, Plaintiff must show, by a preponderance of the evidence, that Defendant's proffered legitimate reasons were not its true reasons but were instead pretext for discrimination. *Id.* at 253.

Defendant asserts it is entitled to summary judgment because there is no evidence to create a genuine issue of material fact that (1) denial of promotion to the alternate general foreman position in 2019 was not an adverse employment action, (2) Defendant had a legitimate, nondiscriminatory reason to not promote Plaintiff to the general foreman position in 2021, and (3) the use of nicknames to refer to Plaintiff did not create a hostile work environment. (Doc. 28-1, at 6-7). Defendant alternatively argues that even if Plaintiff satisfies his prima facie case, it is entitled to summary judgment because Plaintiff failed to show pretext under the *McDonnell Douglas* framework. (Doc. 28-1, at 20-21). Plaintiff contends there is evidence to overcome summary judgment and references his deposition testimony describing "a pattern of discrimination" spanning several years, as well as OCRC findings of probable cause, which constitute an adverse employment action. (Doc. 34, at 14).

"At the outset, [the Court] notes that, while [Plaintiff] asserts a history of [discrimination] dating back [to 2013], those prior claims are not properly before [the Court]." *Schnapp v. FCA US*

*LLC*, 2022 U.S. Dist. LEXIS 162426, *8 (N.D. Ohio). "Further, his OCRC charge only mentions two specific instances of promotion denial –" those being, discrimination and retaliation charges related to the (1) failure to promote to alternate general foreman in 2019 (Doc. 18, at ¶¶ 2-3); and (2) failure to promote to general foreman in 2021 (*id.* at ¶ 11). *Schnapp*, 2022 U.S. Dist. LEXIS 162426, at *8. To assert a Title VII claim, the EEOC or OCRC "charge must be 'sufficiently precise to identify the parties, and to describe generally the action or practices complained of.'" *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) (quoting 29 C.F.R. § 1601.12(b)). And, "[a]s a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge." *Id.*

Thus, Plaintiff's argument – that the history of discrimination dating back to 2013, and the associated probable cause findings by the OCRC, satisfies his prima facie case of discrimination – is insufficient, as his claims are limited to those charges included in the EEOC and OCRC that form the basis of Plaintiff's amended complaint (Doc. 18). *Id.* ("[A]n employee alleging employment discrimination in violation of the statute must first file an administrative charge with the EEOC within a certain time after the alleged wrongful act or acts."). For this Court's consideration, Plaintiff's prima facie case is limited to the circumstances of the 2019 and 2021 charges submitted to the OCRC and EEOC.

*2019 Alternate General Foreman*

In relation to the 2019 charge for failure to promote to the alternate general foreman position, Defendant "agree[s] that for purposes of summary judgment, Coleman meets the first, second and fourth prongs (he is a member of a protected class, is qualified to work as an alternate general foreman, and Kohne is not a member of a protected class)." (Doc. 28-1, at 18). However, Defendant argues Plaintiff is unable to satisfy the final prong of his prima facie case because

7

"denial of a one-day assignment" is *de minimis* and does not rise to the level of an adverse employment action under the Sixth Circuit framework. *Id.* at 18-19.

Under the applicable collective bargaining agreement, an "alternate is an employee who is temporarily assigned to perform duties outside the employee's regular classification." (Doc. 28-4, at 5). Alternates may be temporarily assigned to replace an employee who has time off, to fill a vacant position, to temporarily supplement the staffing level authorized in the budget, and to provide training opportunities and credit. *Id.* When selecting an alternate, "[c]onsideration shall be given to seniority, experience, work record/performance, attendance, disciplinary record, education/training, demonstrated ability to perform the job and divisional training needs." *Id.* at 6. The alternate general foreman position is temporary, lasting only "a couple days" in Plaintiff's experience with the role. (Plaintiff Depo., at 21). In terms of benefits, the position affords approximately six dollars more per hour than Plaintiff's standard pay rate. *Id.* at 103. An employee in the alternate foreman position is paid $50-$100 more per day, depending on the number of hours worked, than standard pay. *Id.* at 104.

"There can be no question that denial of a promotion, even if it is only to a temporary position, can constitute an adverse employment action." *Elam v. D.C. Fire & EMS Dep't*, 2005 U.S. Dist. LEXIS 16936, *17 (D.D.C. 2005) (citing *Hunt v. City of Markham*, 219 F.3d 649, 654 (7th Cir. 2000)). However, the "loss of a bonus is not an adverse employment action in a case where the employee is not automatically entitled to the bonus[.]" *Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1006 (7th Cir. 2000) (cleaned up).

The Sixth Circuit's holding in *Jordan v. City of Cleveland*, although considered under the similar but distinct "materially adverse action" standard used in Title VII retaliation claims, provides guidance on whether denial of a temporary assignment constitutes an adverse

8

employment action. 464 F.3d 584 (6th Cir. 2006). The plaintiff in *Jordan* was an African American firefighter working for Cleveland's Division of Fire. *Id.* at 589. He submitted complaints detailing racial harassment and discrimination for, *inter alia*, the denial of "acting time". *Id.* at 595. "Acting time . . . occurs when there is no officer designated to work on a shift. According to Division policy, acting time is granted on the basis of (1) vacancy and (2) seniority. Jordan was denied acting time, despite being the senior firefighter on his shift, on three specific occasions identified in the record." *Id.* When a firefighter "'acts' as a Lieutenant, he gets paid as a Lieutenant for the entire shift." *Id.* at 596. The *Jordan* court held "[t]hat denial of money would more than amply qualify as a materially adverse action as to any reasonable employee for Title VII purposes." *Id.*; *see also Conti v. Am. Axle & Mfg.*, 326 F. App'x 900, 912 (6th Cir. 2009) (citing *Jordan* with approval in the Title VII discrimination context where an employee was denied benefits and promotion compared to employees outside of the protected class).

In *Bowman v. Shawnee State University*, the Sixth Circuit recognized "*de minimi*s employment actions are not materially adverse and, thus, not actionable."220 F.3d 456, 462 (6th Cir. 2000). *Bowman* held that "[s]imilar to cases where the employment action is not significant enough to rise to the level of a materially adverse employment action, cases where the employment action, while perhaps being materially adverse if permanent, is very temporary also do not constitute materially adverse employment actions." *Id.* The court supported this proposition with the following authority:

> *Jacklyn v. Schering-Plough HealthCare Prod.*, 176 F.3d 921, 930 (6th Cir. 1999) (holding that "neither requiring plaintiff to work at home while she was recovering from out-patient surgery, nor rejecting computer expenses that previously had been approved, were materially adverse employment actions"); *Jackson v. City of Columbus*, 194 F.3d 737 (6th Cir. 1999) (holding that police chief's suspension with pay was not an adverse employment action); *Hollins v. Atlantic Co.*, 188 F.3d at 662 (6th Cir. 1999) (holding that "satisfactory ratings in an overall evaluation, although lower than a previous evaluation, will not constitute an adverse

> employment action where the employee receives a merit raise"); *Kocsis v. Multi-Care Management*, 97 F.3d 876, 885 (6th Cir. 1996) (holding that "reassignments without salary or work changes do not ordinarily constitute adverse employment decisions in employment discrimination claims").

*Id.* The *Bowman* court concluded "the removal of [the plaintiff] from the Coordinator position for only approximately ten days with no loss of income is properly characterized as a *de minimis* employment action that does not rise to the level of a materially adverse employment decision." *Id.*

The Court finds the adverse employment action at issue here is more analogous to *Jordan* than *Bowman*, and therefore is not *de minimis*. In *Bowman* and the cases upon which it relies, the temporary employment actions did not entail monetary loss. Conversely, Defendant passing over Plaintiff in favor of an employee outside of the protected class who had less experience and seniority, and thus preventing Plaintiff from earning alternate general foreman wages, is analogous to facts of *Jordan* and *Conti.*

Because Plaintiff has shown an adverse employment action, he has satisfied his prima facie case for summary judgment purposes.

### *Legitimate, Non-discriminatory Reason*

The burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for its action. *Burdine*, 450 U.S. at 253. Defendant fails to do so here.

"[Defendant's] explanation of its legitimate reasons must be clear and reasonably specific and supported by admissible evidence which would allow the trier of fact rationally to conclude that the employment decision was not motivated by discriminatory animus." *Russell v. Three Pillars*, 2022 U.S. App. LEXIS 3565, *7 (6th Cir.). Defendant's explanation is based upon Plaintiff's testimony that Calzone selected Kohne for the alternate general foreman position because Calzone thought Kohne was best for the job. (Doc. 28-1, at 20). However, this does not

explain why Plaintiff, who was on the same disciplinary step as Kohne, was excluded from consideration for the alternate general foreman position.

Defendant has not provided a clear and reasonably specific legitimate reason for the employment decision that is supported by admissible evidence and is therefore not entitled to summary judgment on the discrimination claim related to the 2019 alternate general foreman position.

*2021 General Foreman*

Defendant argues Plaintiff is unable to establish his prima facie case concerning the failure to promote him to general foreman in 2021.

To establish a prima facie case in the context of a failure to promote claim, Plaintiff must prove that "(1) [he] is a member of a protected class; (2) [he] applied for and was qualified for a promotion; (3) [he] was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions at the same time [his] request for promotion was denied." *Warf v. United States VA*, 713 F.3d 874, 879 (6th Cir. 2013) (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 562-63 (6th Cir. 2000)). Defendant agrees that Plaintiff satisfies the first three elements: (1) he is a member of a protected class, (2) he applied for and was qualified for the position, and (3) he was considered for and denied the position. (Doc. 28-1, at 15-16). Defendant contends Plaintiff is unable to satisfy the fourth prong – that other employees of similar qualifications who are not members of his protected class received the promotion.

Plaintiff's opposition brief does not address Defendant's arguments for summary judgment regarding the discrimination claims based on the failure to promote to general foreman. *See* Doc. 34, at 13-15. In the Sixth Circuit, when a nonmovant fails to substantively respond to a motion for

summary judgment, the nonmovant forfeits the issues and arguments. *Hill v. Whitford*, 2021 U.S. App. LEXIS 24897, *8 (6th Cir.); *Lyons v. Mackey*, 615 F.2d 1361, 1361 (6th Cir. 1980). However, "a district court may not use a party's failure to respond (in whole or in part) as a reason for granting summary judgment without first examining all the materials properly before it under Rule 56(c)." *Hill*, 2021 U.S. App. LEXIS 24897, at *8. (internal quotation omitted). But a district court need not "comb the record from the partisan perspective of an advocate for the non-moving party[.]" *Id.* at *9 (quoting *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 410 (6th Cir. 1992)).

Defendant contends Plaintiff was not similarly qualified to the members outside of his protected class who received the promotion because all promoted employees scored better on the 2021 interviews. (Doc. 28-1, at 21). Defendant relies on the interview score results which are attached to the declaration of Kelly Murphy, a manager in Defendant's Department of Human Resources. (Doc. 28-25). Defendant has thus pointed to evidence establishing Plaintiff was not similarly qualified. Plaintiff has not provided evidence to contradict this. Because Plaintiff bears the initial burden to demonstrate a prima facie case of discrimination, and he has not done so in the context of the alleged failure to promote to the general foreman position, Defendants are accordingly entitled to summary judgment.

Retaliation

Plaintiff argues Defendant illegally retaliated against him after he filed a charge of discrimination on October 24, 2019, by failing to promote him to general foreman following the December 2019 testing and interview process. (Doc. 34, at 15). Defendant contends Plaintiff is unable to show a causal connection between the protected activity and its decision to not promote Plaintiff. (Doc. 28-1, at 26-27). In reply, Defendant argues none of Plaintiff's evidence shows pretext. (Doc. 38, at 10-11).

"Because [Plaintiff] did not present any direct evidence of discrimination or retaliation on the part of the defendants, [the Court] must analyze [his] . . . retaliation claims in accordance with the burden-shifting framework set forth in [*McDonnell Douglas*.]" *Wohadlo v. TentCraft, Inc.*, 2022 U.S. App. LEXIS 14621, *10 (6th Cir.). To show a prima facie case of retaliation, Plaintiff must show (1) he engaged in protected activity under Title VII, (2) his employer knew about it, (3) his employer took an adverse employment action against him, and (4) the adverse action was causally related to the protected activity. *Id.* "If a plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. If the defendant satisfies its burden, the burden then shifts back to the plaintiff to establish that the stated reason was pretextual." *Id.* at *10-11 (internal citation omitted).

Plaintiff argues that he can show a question of fact regarding a causal relationship by temporal proximity, perceived prejudicial comments made by examiners, the decision to disqualify the first round of test scores at which Plaintiff scored third, the removal of the African American examiner on the testing panel for the second round of interviews, and unsubstantiated reasons for administering a second test. (Doc. 34, at 15-16). [2]

The parties agree Plaintiff filed a charge with the OCRC on October 24, 2019, alleging he was denied promotion to the alternate general foreman position as a result of racial discrimination. *See* Doc. 28-1, at 8; Doc. 34, at 2.

---

2. Defendant argues Plaintiff cannot meet the materially adverse action prong regarding the failure to promote to alternate general foreman. Plaintiff does not identify any prima facie elements related to that claim, and instead singularly argues retaliation related to the failure to promote to general foreman position. *See* Doc. 34. Therefore, insofar as Plaintiff pled retaliation claims related to the alternate foreman position, he has not satisfied his prima facie case, and Defendant is entitled to judgment accordingly.

In 2019, Defendant sought to fill a general foreman position. (Doc. 28-10, at ¶ 9). Interviews were conducted in November 2019. *Id.* The interviews involved an oral examination where interviewees' answers were scored based upon pre-determined best responses. *Id.* During the November interviews, one of the interviewers made a comment to the interviewing panel that two Caucasian employees were good guys, but commented Plaintiff was a troublemaker shortly before he entered the room. (Doc. 36, at 23). One interviewer, Mark Riley, averred the comments were inappropriate. *Id.*

Plaintiff's score of 38.00 points on the interview placed him in a tie for third-highest score with Paul Cooper and Anthony Foster and at a lower score than Robert Lawecki and Richard Mowery. (Doc. 28-21). Douglas McNulty and Jeffrey Neeper scored lower than Plaintiff. *Id.* A memorandum requesting promotion based upon those scores was sent to Arnold, who found the interview questions were "lacking with regard to leadership ability" and placed a hold on the promotions. (Doc. 28-28, at 1-2). She thereafter learned of the allegations that the structured interview questions may have been compromised and ordered the interviews be reconducted. *Id.* at 3. Those allegations were never substantiated.

Plaintiff scored tenth on the January 2021 structured interviews. (Doc. 28-25). Mark Riley, the African American panelist who complained of inappropriate comments during the November 2019 interview process, was not included on the panel for the readministered interviews. (Doc. 36, at 23). Three Caucasian employees, Jeffrey Neeper, Douglas McNulty, and Robert Lawecki, were promoted to general foreman based upon the 2021 interviews. (Doc. 28-10, at 3).

*Prima Facie Case*

To satisfy the causation prong, "[Plaintiff] must demonstrate that there was a causal connection between [his] protected activity and the adverse employment action taken against

14

[him], meaning that but-for [his] protected activity," he would have been promoted to general foreman. *Jackson v. Genesee Cnty. Rd. Comm'n*, 999 F.3d 333, 348-349 (6th Cir. 2021). "At the prima facie stage, this burden 'is not onerous,' and can be met through 'evidence that defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights.'" *Id.* at 349 (quoting *George v. Youngstown State Univ.*, 966 F.3d 446, 460 (6th Cir. 2020)).

Plaintiff has produced evidence sufficient to create a genuine issue of material fact regarding the "causal relationship" prong for purposes of overcoming summary judgment. By scoring third during the November interviews, Plaintiff was qualified for promotion, given three candidates were ultimately promoted. Further, he scored higher on the November interview than two of the candidates who were ultimately promoted. The decision to vacate Plaintiff's qualifying score and to readminister the interviews occurred just two months after he filed a claim of discrimination. Coupled with the comments by the interview panelist that Plaintiff was a "troublemaker" – which a jury could find refers to engagement in a protected activity shortly prior to the interviews – a jury could find under the non-onerous standard that but for Plaintiff's protected activity, he would have been promoted to general foreman.

*Legitimate, Non-Discriminatory Reason*

The burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for its action. *Burdine*, 450 U.S. at 253. "[Defendant's] explanation of its legitimate reasons must be clear and reasonably specific and supported by admissible evidence which would allow the trier of fact rationally to conclude that the employment decision was not motivated by discriminatory animus." *Russell*, 2022 U.S. App. LEXIS 3565, *7.

15

Defendant attempts to satisfy its burden by contending the December 2019 interview results were disregarded for two non-discriminatory reasons, those being (1) the questions failed to test leadership qualities, and (2) because of allegations the first interviews were compromised. (Doc. 28-1, at 21). Each of these reasons provide a clear legitimate reason as to why Defendant chose to disregard the first interviews, and both are likewise supported by admissible evidence. *See* Doc. 28-28. Defendant has satisfied its burden which now shifts to Plaintiff to show the proffered reasons are pretextual.

*Pretext for Discrimination*

To overcome summary judgment, Plaintiff must show the proffered reasons were not the actual reasons but were instead pretext for discrimination. *Buggs v. FCA US, LLC*, 2023 U.S. App. LEXIS 1591, *9 (6th Cir.). A plaintiff can establish pretext by showing that the proffered reasons "(1) had no basis in fact; (2) did not actually motivate the [adverse employment] action; or (3) [were] insufficient to warrant the [adverse employment] action." *Brown v. Kelsey-Hayes Co.*, 814 F. App'x 72, 80 (6th Cir. 2020) (quoting *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 858 (6th Cir. 2018)). Plaintiff "must produce 'sufficient evidence from which a jury could reasonably reject [the employer's] explanation'" for its actions. *Id.* (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)). The Sixth Circuit has held that "[m]ere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Lindsay v. Yates*, 578 F.3d 407, 421 (6th Cir. 2009) (quoting *Peters v. Elec. Co.*, 285 F.3d 456, 470 (6th Cir. 2002)). "[S]ummary judgment is appropriate . . . if the plaintiff only created a weak issue of fact as to whether the defendant's reason was untrue and there is ample evidence to support the employers position." *Abdulnour v. Campbell Soup Supply Co., LLC*, 502 F.3d 496, 504 (6th Cir. 2007).

Although Plaintiff does not specify, the Court interprets his brief as to argue under the "did not actually motivate" method for showing pretext. *See* Doc. 34, at 16. "Plaintiff can establish pretext by showing that it was more likely than not that Defendants terminated Plaintiff based on an illegal motivation. Put another way, Plaintiff must show that the sheer weight of the circumstantial evidence of discrimination makes it more likely than not that the employer's explanation is a pretext, or coverup." *Abdulnour*, 502 F.3d at 503.

Plaintiff has produced sufficient evidence for a reasonable juror to find it more likely than not that Defendant's decision to not promote him was based on retaliatory intent. This evidence includes (1) temporal proximity to the protected activity; (2) inappropriate comments made by a panelist; (3) suspect timing of the decision to readminister the interviews; and (4) the lack of substantiating evidence showing the interview questions were compromised.

### Temporal Proximity

"While temporal proximity may be sufficient to show causation, it alone is not sufficient to demonstrate pretext." *Green v. Wal-Mart Stores, East, L.P.*, 2013 U.S. Dist. LEXIS 89019, *22 (S.D. Ohio). However, "[t]emporal proximity combined with other evidence also supports a finding of []pretext." *Stout v. Berry Ins. Grp.*, 2021 U.S. Dist. LEXIS 154420, *15 (S.D. Ohio). The Sixth Circuit has held "suspicious timing is a strong indicator of pretext when accompanied by some other, independent evidence." *Bell v. Prefix, Inc.*, 321 F. App'x 423, 431 (6th Cir. 2009).

The parties agree Plaintiff engaged in the protected activity of filing a discrimination complaint in October 2019. *See* Doc. 28-1, at 8; Doc. 34, at 2. The decision to disregard Plaintiff's qualifying score occurred less than two months later in December 2019. (Doc. 28-28, at 3). The suspect timing of the action therefore weighs in favor of finding Defendant's purported reason to be pretext for discrimination.

17

*Inappropriate Comments*

As stated above, one interviewer described Plaintiff as a troublemaker to the other interviewers shortly before Plaintiff's interview began. (Doc. 36, at 23). The interviews were conducted in November 2019, just weeks after Plaintiff filed a charge of discrimination. (Doc. 28-10, at ¶ 9). The inappropriate nature of the comment garnered a complaint from another interviewer. (Doc. 36, at 23). Plaintiff's disciplinary record shows he had not been disciplined in over a year. (Doc. 28-8). He was last disciplined for failure to provide medical proof of illness after using sick pay benefits in 2018. *Id.* Given the timing of Plaintiff's last discipline and the close temporal proximity to his protected activity, a reasonable juror could find comments that Plaintiff was a "troublemaker" (thus implying he is not suitable for promotion) as pretext for retaliatory intent because the comments could be in reference to the protected activity.

*Suspect Timing*

In tandem with the suspect timing discussed above, the timing of Arnold's decision to reconduct the interviews is also suspect. That decision occurred after the first interviews were scored and submitted to the Department of Public Service in a request to promote two employees to general foreman. (Doc. 28-28, at 2). The record shows the November interview questions had previously been approved by Human Resources. (Doc. 28-33, at 4). That preapproved questions were deemed unsatisfactory only after candidates were scored and ranked raises an inference of nonlegitimate motivations. A reasonable juror could conclude the decision to reconduct the interviews was made because management was dissatisfied with the candidates who scored highest.

18

*Compromised Interview Questions*

One of the nondiscriminatory reasons offered by Defendant is that the questions to the first interviewees had been circulated prior to the interview and the process was therefore compromised. (Doc. 28-1, at 13). However, the record does not show that this purported reason was a significant motivating factor in Defendant's decision to reconduct the interviews. First, Defendant had already placed a hold on filling the positions prior to the allegations of cheating. (Doc. 28-28, at 12). Second, the purported allegation is limited to a complaint from an employee, Nancy Macias, that she heard rumors Paul Cooper and Robert Lawecki had conversations about the test questions prior to the November interviews. (Doc. 28-30). The record shows Macias did not have firsthand knowledge of the conversation, the allegations were never substantiated, no employee was ever disciplined, and there is no evidence those allegations were ever investigated. *Cf.*, *id.*

In the Sixth Circuit, "summary judgment is appropriate . . . if the plaintiff only created a weak issue of fact as to whether the defendant's reason was untrue and there is ample evidence to support the employer's position." *Abdulnour*, 502 F.3d at 504. Because Plaintiff created an issue of fact supported by evidence of temporal proximity, suspect timing, and inappropriate comments related to his interview, and because Defendant did not provide ample evidence supporting its position, a reasonable juror could find it was more likely than not that Defendant's decision to disregard Plaintiff's score and deprive him of promotion to be rooted in retaliatory intent. Defendant's motion is accordingly denied.

Hostile Work Environment

Plaintiff claims Defendant created a hostile work environment based on race under Title VII and Ohio Revised Code § 4112.02. To establish a prima facie case, Plaintiff must show that

"(1) he belongs to a protected group; (2) he was subject to unwelcomed harassment; (3) that harassment was based on race; (4) the harassment was sufficiently severe or pervasive to alter the conditions of his employment; (5) the employer knew or should have known about the harassment and failed to take appropriate remedial action." *Strickland v. City of Detroit*, 995 F.3d 495, 503 (6th Cir. 2021) (citing *Khalaf v. Ford Motor Co.*, 973 F.3d 469, 482 (6th Cir. 2020)).

*Prima Facie Case*

In its motion for summary judgment, Defendant stipulates Plaintiff is a member of a protected class and was subject to unwelcomed harassment. (Doc. 28-1, at 28). Defendant contends there is no evidence the alleged harassment was race-based or sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment. *Id.*

*Harassment Based on Race*

Plaintiff can demonstrate discriminatory harassment by either pointing to the use of race-specific and derogatory terms or by "offer[ing] direct comparative evidence about how the alleged harasser treated members" of other racers. *Strickland*, 995 F.3d at 503 (quoting *Oracle v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80-81 (1998)). Defendant argues that the nicknames "Mokey" and "Don King" used toward Plaintiff were not race-based because three of the foremen using the nicknames are the same race as Plaintiff. (Doc. 28-1, at 28). However, "there can . . . be racial discrimination within the same race. . . ." *Williams v. Wendler*, 530 F.3d 584, 587 (7th Cir. 2008). Plaintiff testified "Mokey" is a derogatory term used in reference to an African American person's hair (Plaintiff Depo., at 28). "Don King" is a comparison to American boxing promoter Don King, who was also African American. *Id.* at 137. Defendant maintains the comparison was made in reference to Plaintiff's hair, not his race. (Doc. 28-1, at 28). This court has held that nicknames are racially charged when they refer to Plaintiff's identity as an African American.

20

*Lumpkin v. Adalet/Scott Fetzer Co.*, 2017 U.S. Dist. LEXIS 73594, *13 (N.D. Ohio). Recognizing Plaintiff's hairstyle is a part of his identity, this Court find at least one of the nicknames, "Don King," to be race-based.

### Sufficiently Severe or Pervasive

To the extent Plaintiff establishes the alleged harassment was race-based, Defendant argues the name calling was not sufficiently severe or pervasive enough to create an abusive work environment. To satisfy this prong, the harassment must create a hostile work environment, which exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment . . . ." *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 289, 309 (6th Cir. 2016) (quoting *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993)). In the instant case, Plaintiff claims the name calling began in 2014 and continued until the present action. (Plaintiff Depo., at 157). Factors to consider include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Williams v. CSX Transp. Co.*, 643 F.3d 502, 512 (6th Cir. 2011).

In his deposition, Plaintiff categorized the nicknames as "jokes," occurring "here and there." (Plaintiff Depo., at 157). He claims he complained internally regarding the name calling but "was not one to go crying because someone called [him] 'Mokey' or 'Don King.'" *Id.* The evidence suggests the nicknames, while not isolated, are more similar to an offensive utterance than physical threats or humiliation. There is no evidence in the record to indicate the comments made by the foremen unreasonably interfered with Plaintiff's work performance. The Sixth Circuit has held that occasional offensive utterances are do not meet the threshold of creating a hostile work environment. *Grace v. USCAR*, 521 F.3d 655, 679 (6th Cir. 2008). "To hold otherwise would

21

risk changing Title VII into a code of workplace civility, a result we have previously rejected." *Id.* (internal quotation marks omitted). Although offensive to Plaintiff, the alleged statements are not sufficiently severe or pervasive to satisfy the fourth prong of Plaintiff's prima facie case. Defendant is therefore entitled to summary judgment on Plaintiff's hostile work environment claim.

CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendant's Motion for Summary Judgment (Doc. 28-1) be, and the same hereby is, GRANTED IN PART AND DENIED IN PART as set forth herein. Plaintiff's discrimination claim based on failure to promote to alternate general foreman in 2019 and Plaintiff's retaliation claim based on failure to promote to general foreman in 2021 remain.

 s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE